# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 23-0151V

| |
|---|
| ANTHONY BLEI, |
| Petitioner, |
| v. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |
| Respondent. |

Chief Special Master Corcoran

Filed: January 10, 2025

*Andrew Donald Downing, Downing, Allison & Jorgenson, Phoenix, AZ,* for Petitioner.

*Ryan Nelson, U.S. Department of Justice, Washington, DC,* for Respondent.

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On February 3, 2023, Anthony Blei filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that an influenza ("flu") vaccine he received on October 7, 2021, resulted in a left-sided shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, lasting more than six months. Petition at 1, ECF No. 1.

Petitioner has moved for a final award of fees in this case, which was voluntarily dismissed last year. However, for the reasons set forth below, I find that Petitioner has failed to establish there was a reasonable basis for his claim. Thus, he is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.    Procedural History

After determining that Petitioner had failed to provide sufficient evidence to support the six-month severity requirement, I allowed him the opportunity to correct the noted deficiency or to otherwise show cause why his claim should not be dismissed. ECF No. 23; *see* Section 11(c)(1)(D)(i) (severity requirement). In response, Petitioner moved for a "decision dismissing his Vaccine Program claim so that he may pursue responsible third parties." Petitioner's Motion for a Dismissal Decision at 8, filed Apr. 23, 2024 (ECF No. 24). The Petition was dismissed, with judgment entering in mid-May 2024 (ECF No. 27).

On May 25, 2024, Petitioner filed a request for an award of $35,142.00 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs ("Motion") at 10, ECF No. 30. Emphasizing the voluntary dismissal and preference for the pursuit of a civil action instead, Petitioner insisted that his claim "was filed in good faith and with reasonable basis." Motion at 9-10; *see* Section 15(e)(1) (requirements for a fees award in non-compensated cases). As in his motion for dismissal, he acknowledged that the traditional SIRVA symptoms he experienced would not be sufficient to satisfy the severity requirement, and that expert opinion would be needed "to prove the causal connection between the original shoulder injury and development of the [left forearm] lipoma" – a symptom that continued beyond six months post-vaccination. *Id.* Petitioner also provided two articles describing lipomas. Exhibits 6-7, filed May 25, 2024, ECF No. 29.

Respondent filed a response on June 27, 2024, arguing that "[P]etitioner ha[d] failed to establish a reasonable basis for his SIRVA claim," and thus his fees request should be denied. Respondent's Response to Motion at 12, ECF No. 33. Specifically, Respondent contended that the left forearm lipoma cited by Petitioner predated vaccination, was due to a spider bite in 2019, and had been described as present for a year during a July 2020 telephonic appointment (hence well before vaccination). *Id.* at 3. He also emphasized Petitioner's January 2022 statement – that he was ineligible for a Program award (no matter how the claim was styled) because his left shoulder pain did not last for four months. *Id.* at 5.

In his reply, filed on July 4, 2024, Petitioner argued that the itchy painful bump he suffered from the spider bite was different than the lipoma he experienced several weeks after vaccination. Petitioner's Reply in Support of Motion ("Reply") at 1-8, ECF No. 34. He reiterated his previous assertion that the left forearm lipoma could have been evidence of six-month sequela sufficient to establish reasonable basis. *Id.* at 8-18.

## II.    Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*), *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis for a claim at the time of filing may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

## ANALYSIS

As the current record reflects, Petitioner sought treatment for left shoulder pain for less than six weeks after his October 2021 vaccination. He continued to complain of numbness and tingling in his fingertips and a left forearm lipoma for a few weeks thereafter, but did not again seek treatment for these symptoms beyond December 2021, only two months post-vaccination. There is also a lack of evidence linking these residual symptoms to the flu vaccine Petitioner received.

When Petitioner first sought medical care on October 13, 2021, at his primary care provider's ("PCP's") clinic where he received the flu vaccine, he described a "weird spasm" in his shoulder when receiving the flu shot that had morphed into pain in his left shoulder blade and up his neck and jaw. Exhibit 3 at 664. Several weeks post-vaccination, he reported a lipoma on his left forearm, tingling and numbness down his arms into his fingers, and sensitivity around his elbow. *E.g., id.* at 736-37. After reviewing the results of a cervical MRI, undergone in early November 2021, Petitioner's treating physician added a diagnosis of cervical radiculopathy. *Id.* at 757.

By November 10, 2021, approximately one-month post-vaccination, Petitioner reported a lessening of his shoulder pain but continued tingling and numbness in his fingers and "nerve issues" in his neck. Exhibit 3 at 764, 772, 774. During an appointment on November 12, 2021, Petitioner expressed uncertainty related to the timing of the left forearm lipoma - whether it was "was there before or not," and to the source of his tingling and numbness – whether "coming from his shoulder or his neck." *Id.* at 768. After undergoing a physical therapy ("PT") evaluation on November 15, 2021, he was provided a home exercise program. *Id.* at 780-86. He also underwent an MRI that same day that showed rotator cuff tears, including a SLAP tear, likely to be degenerative; a ligament sprain, osteoarthritis, and mild subacromial-subdeltoid bursitis. *Id.* at 781.

This PT visit and MRI were the last time Petitioner sought treatment for traditional SIRVA-related symptoms (pain and limited range of motion), and Petitioner reported a resolution of these symptoms at subsequent appointments in November 2021. On November 16, 2021, Petitioner was offered "an appointment with the pain consult team," but declined, stating that his pain had resolved. Exhibit 3 at 790. Then, when seen by his orthopedist two days later, Petitioner stated that the left shoulder pain and arm issues related to the flu vaccine he received "ha[d] largely resolved." Exhibit 3 at 795. During a neurology evaluation on November 19, 2021, Petitioner likewise stated that "since onset his [shoulder] symptoms have gradually resolved, and he is essentially pain free at this point." Exhibit 3 at 800-01.

Petitioner nevertheless continued to complain of numbness and tingling in his fingers (with an occasional mention of the subcutaneous forearm lump) through November 2021. On November 23, 2021, he reported that his "shoulder pain has resolved but [he] still has numbness in his fingers and hand" and a lump on his forearm. *Id.* at 806. He attended one PT session on November 30, 2021, for acute left shoulder pain and cervical radiculopathy on November 30, 2021. *Id.* at 819. At the session, he reported that he was "about 90% improved"; was experiencing no pain, only numbness and tingling of his first to third digits of his left hand and a little stiffness in his neck; and didn't think he would require further PT. *Id.* The November 23, 2021 appointment is the

last mention of a lipoma.

During a telephonic visit on December 6, 2021, Petitioner stated that he "[wa]s doing well with only mildness, tingling in finger tips [and had] [r]eturned to work, regular duty, today!" *Id.* at 825. His disability paperwork from the last two months was determined to be complete. *Id.* at 826.

On January 22, 2022, Petitioner sent an email to his PCP, acknowledging that he was unable to meet the requirements for a SIRVA injury and "[b]ecause [his] intense pain didn't last for four months [wa]s ineligible for the VICP program." Exhibit 3 at 834. Disclosing that his "attorney suggested that [he] file a malpractice lawsuit or personal injury lawsuit," Petitioner suggested that there may be a better solution and requested that someone from the PCP's legal department contact him. *Id.*

Five months later, on June 29, 2022, Petitioner explored options for a new PCP within the VA (Veteran's Administration) system. Exhibit 5 at 111. He returned approximately one month later, on July 28, 2022, requesting a shoulder examination for his litigation against his Kaiser treating physicians. *Id.* at 100. Describing "an immediate spasm/pain [that] started from the left face down to the left shoulder and left arm" that were now "gone," he made no mention of a lipoma. *Id.* Petitioner continued to pursue treatment for other conditions without mentioning a lipoma or any other symptoms he previously experienced. *See* Exhibit 5.

In his initial declaration, signed under penalty of perjury on October 11, 2022, Petitioner insisted that he "still ha[d] lingering consequences from [his] SIRVA injury." Exhibit 1 at ¶ 20. He averred that he was terminated from his job shortly after returning to work on December 1, 2021, because "ultimately, [he] couldn't do the work." *Id.* at ¶18. Regarding his prior cervical issues, Petitioner stated that spinal surgeon previously informed him that his "radiculopathy was severe on the right side but only moderate-to-severe on the left side." *Id.* at ¶ 8.

In a supplemental declaration, signed under penalty of perjury on July 10, 2023, Petitioner asserted that the lipoma he experienced "[wa]s still there and still causes pain and burning in [his] left arm, even thru today." Exhibit 4 at ¶ 5. He insisted that he did not seek further medical care because "the doctors simply indicated there was [sic] anything more they could do." *Id.* ¶ 6.

There is no objective evidence in the record, other than Petitioner's statements made in filings created after the initiation of this vaccine claim, to support his assertion of vaccine-related symptoms existing beyond December 2021, only two months post-vaccination. And the record clearly shows that Petitioner's traditional SIRVA symptoms

had resolved several weeks earlier, in late November 2021.

Moreover, it is more likely that the numbness, tinglingly, and pain Petitioner experienced in his neck, arm (particularly his elbow), and hand was related to his cervical radiculopathy (which would not be a basis for a SIRVA claim in any event). And there is no objective evidence regarding the cause of the left forearm lipoma. Even in 2021, Petitioner was unable to recall whether the lipoma predated his vaccination.

Given the above, I cannot conclude that the record preponderantly establishes Petitioner's injury persisted for the six months required by the Act. And this evidence about the claim's foundational deficiencies existed well before the petition was filed – and could have been ascertained by counsel. Thus, the claim was untenable from the outset. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. The claim therefore lacked an objective basis, and fees are properly denied.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.